**IN THE UNITED STATES DISTRICT COURT**
**FOR THE SOUTHERN DISTRICT OF OHIO**
**WESTERN DIVISION (Dayton)**

| | | |
|---|---|---|
| MICHAEL P. HOLLOBAUGH Sr. | ) | CASE NO. |
| 5543 Route 46 | ) | |
| Smethport, PA 16749 | ) | JUDGE: |
| | ) | |
| Plaintiff, | ) | |
| | ) | |
| v. | ) | **COMPLAINT FOR DAMAGES** |
| | ) | **AND INJUNCTIVE RELIEF** |
| POHL TRANSPORTATION, INC. | ) | |
| 9297 McGreevey Rd. | ) | **JURY DEMAND ENDORSED** |
| Versailles, OH 45380 | ) | **HEREIN** |
| | ) | |
| **Serve also**: | ) | |
| POHL TRANSPORTATION, INC. | ) | |
| c/o Harold J Pohl (Stat. Agent) | ) | |
| 9437 McGreevey Rd. | ) | |
| Versailles, Ohio 45380 | ) | |
| | ) | |
| Defendant. | ) | |
| | ) | |

Plaintiff Michael P. Hollobaugh Sr., by and through undersigned counsel, as his Complaint against the Defendant, states and avers the following:

## PARTIES

1. Hollobaugh is a resident of the city of Smethport, McKean County, state of Pennsylvania.

2. Defendant POHL TRANSPORTATION, INC. ("Pohl") is a domestic company that conducts business throughout Ohio.

3. The events that give rise to the claims for relief in this Complaint occurred at Pohl's location at 9297 McGreevey Rd., Versailles, OH 45380 and the areas Pohl serves.

4. Pohl is, and was at all times hereinafter mentioned, Hollobaugh's employer within the meaning of the Family First Coronavirus Response Act ("FFCRA") 29 U.S.C. § 2620 et

seq., the Americans with Disability Act ("ADA") 42 U.S.C. § 12101, and R.C. § 4112.01(A)(2).

## JURISDICTION & VENUE

5. This court has subject matter jurisdiction pursuant to 28 U.S.C. § 1331 in that Hollobaugh is alleging a federal law claim under the FFCRA and the ADA.

6. This Court has supplemental jurisdiction over Hollobaugh's state law claims pursuant to 28 U.S.C. § 1367, as Hollobaugh's state law claims are so closely related to his federal law claims that they form part of the same case or controversy under Article III of the United States Constitution.

7. Venue is proper in this Court pursuant to 28 U.S.C. § 1391.

8. Within 180 days of the conduct alleged below, Hollobaugh filed a Charge of Discrimination with the Equal Employment Opportunity Commission ("EEOC", Charge No. 473-2020-01391) against Defendants ("EEOC Charge").

9. On or about September 22, 2020 the EEOC issued and mailed a Dismissal and Notice of Rights letter to Hollobaugh regarding the EEOC Charge.

10. Hollobaugh received the Dismissal and Notice of Rights from the EEOC in accordance with 42 U.S.C. § 2000e-5(f)(1), which has been attached hereto as Plaintiff's Exhibit 1.

11. Hollobaugh has filed this Complaint on or before the 90-day deadline set forth in the Dismissal and Notice of Rights.

12. Hollobaugh has properly exhausted all administrative remedies pursuant to 29 C.F.R. § 1614.407(b).

## FACTS

13. Hollobaugh is a former employee of Pohl.

14. At all times noted herein, Hollobaugh was fully qualified for and could fully perform the essential functions of his job, with or without a reasonable accommodation.

15. Hollobaugh worked for Pohl as an over-the-road truck driver from on or about December 9, 2019 until Pohl terminated Hollobaugh's employment on or about March 31, 2020, without reason cited.

16. Hollobaugh is in a protected class for disability due to his diabetes, PTSD, and depression. He gave notice of his disabilities to Pohl at the time of his hire.

17. Additionally, Hollobaugh is also in a protected class for disability by association due to his wife's colon cancer. He also gave notice of his wife's disability during his employment.

18. Hollobaugh's early employment was generally positive, or at least without significant issue.

19. Things changed for Hollobaugh, however, in or around March 2020 when the COVID-19 pandemic hit the United States and the state of Ohio set out Stay-at-Home orders due it.

20. In or around early 2020, Hollobaugh had to take off multiple days due to his wife's disability. He maintained constant communication with Pohl via Megan (LNU, dispatcher) about his absences.

21. Despite Hollobaugh's notice to Pohl of the medical reasons for his absences, his job was threatened repeatedly for "abusing the company" by Brian Pohl (owner) for taking the time off for his wife's disability. Brian Pohl also said that, because Hollobaugh was missing work for his wife's disability, that he was "not a truck driver."

22. The negative comments by Brian Pohl about Hollobaugh's time off because of his wife's disability were stated in a conference call on or about March 22, 2020. Similar comments were made around that same time as well.

23. On or about March 29, 2020, Hollobaugh spoke with Angie Deeter (head of safety).

24. In the conversation, Hollobaugh gave additional notice of his and his wife disabilities and stated his safety concerns of being given driving routes into areas with high COVID-19 infection rates. This was a protected complaint about workplace safety and a request to engage in the interactive process for reasonable accommodations.

25. Deeter told Hollobaugh in response that if he did not drive as demanded, he would be fired. This was yet another threat against his job due to his disability protected class and a refusal to engage in the interactive process.

26. Additionally, Hollobaugh also complained about mold in Pohl's semitrucks both verbally an in writing via email. These were also protected complaints of unsafe working conditions.

27. Hollobaugh spoke with his doctor and provided a doctor's note to Pohl taking Hollobaugh off work until June 1, 2020 due to the pandemic. He provided this note in or around late March 2020.

28. On or about April 6, 2020, Rick (LNU, VP) teleconferenced Hollobaugh and said that the doctor's note prevented him from ever driving again. This was outright false, the limitation was that Hollobaugh should not continue driving until it was safe to do so because of the pandemic and Hollobaugh told Rick (LNU) the same.

29. Rick (LNU) ignored the response and told Hollobaugh to clean out his truck and that someone would pick it up.

30. Hollobaugh was picked up a few days later by a coworker but was never allowed to drive again for Pohl.

31. Pohl cut off Hollobaugh's benefits (including his and his family's medical insurance) on or about March 31, 2020 but did not give him notice at that time. This constituted his termination, but he was not aware of it until he went to pick up prescriptions.

32. Notably, the United States passed the FFCRA into law or around March 2020. It became effective beginning on April 1, 2020, one day after Hollobaugh's effective termination.

33. Pohl is a covered employer under the FFCRA.

34. Hollobaugh would have been an eligible employee under the FFCRA due to his and his wife's disabilities and his length of employment.

35. Despite that Hollobaugh would have been entitled to leave under the FFCRA, Pohl terminated his employment the day before the law went into effect.

36. Pohl's act of terminating Hollobaugh's employment the day before the FFCRA went into effect was done with the intent of interfering with his FFCRA rights.

37. Pohl violated the FFCRA by interfering with Hollobaugh's FFCRA rights.

38. Defendant's termination of Hollobaugh was an adverse employment action against him.

39. Defendant's purported reason (or lack thereof) for Hollobaugh's termination is pretextual.

40. Defendant actually terminated Hollobaugh's employment discriminatorily against his and/or his wife's disabilities, in retaliation for his complaints of workplace safety, to avoid engaging in the interactive process of finding Hollobaugh a reasonable accommodation, and/or to interfere with his FFCRA rights.

41. As a result of Defendant's acts and omissions above, Hollobaugh has suffered damages.

## COUNT I: WRONGFUL TERMINATION IN VIOLATION OF PUBLIC POLICY

42. Hollobaugh restates each and every prior paragraph of this Complaint, as if it were fully restated herein.

43. A clear public policy exists and is manifested in Ohio statutes, including R.C. § 4101.11 and/or § 4101.12, and/or administrative regulations, or in the common law, in favor of providing workers with a healthy and safe work environment, and against terminating an employee based on complaints of unsafe working conditions.

44. As set forth above, Hollobaugh repeatedly made oral and written reports to Pohl not only about his disparate treatment, but also about the unethical, unlawful, and/or policy-violating behavior that was going on there, including unsafe working conditions caused by COVID-19 and mold in his truck.

45. Defendant's termination of Hollobaugh's employment jeopardizes these public policies.

46. Defendant's termination of Hollobaugh's employment was motivated by conduct related to these public policies.

47. Defendant had no overriding business justification for terminating Hollobaugh's employment.

48. As a direct and proximate result of Defendant's conduct, Hollobaugh suffered and will continue to suffer damages.

## COUNT II: DISABILITY DISCRIMINATION IN VIOLATION OF R.C. § 4112, et seq.

49. Hollobaugh restates each and every prior paragraph of this Complaint, as if it were fully restated herein.

50. Hollobaugh is in a protected class for his and his wife's disabilities (described *supra*).

51. Defendant had notice of Hollobaugh's disabilities.

52. During his employment with Defendants, Hollobaugh was subjected to threats of dismissal from his superiors based on his and his wife's disabilities.

53. Defendants knew or should have known of the threats against Hollobaugh because the owner, Brian Pohl, was the individual making the threats.

54. Defendant's termination of Hollobaugh's employment was an adverse employment action against him.

55. Defendant's purported reason (or lack thereof) for Hollobaugh's termination was pretextual.

56. R.C. § 4112 et seq. provides that it is an unlawful discriminatory practice for an employer to discriminate against an employee on the basis of the employee's disability.

57. Defendant treated Hollobaugh differently than other similarly situated employees based upon his disability.

58. Defendant violated R.C. § 4112.02 and R.C. § 4112.99 by treating Hollobaugh differently from other similarly situated employees outside his protected class.

59. Defendant violated R.C. § 4112.02 and R.C. § 4112.99 by applying their employment policies in a disparate manner based on Hollobaugh's disability.

60. Defendant violated R.C. § 4112.02 and R.C. § 4112.99 by applying their disciplinary policies in a disparate manner based on Hollobaugh's disability.

61. Defendant violated R.C. § 4112.02 and R.C. § 4112.99 by terminating Hollobaugh's employment because of his disability.

62. Hollobaugh incurred emotional distress damages as a result of Defendant's conduct described herein.

63. As a direct and proximate result of Defendant's acts and omissions, Hollobaugh has suffered and will continue to suffer damages.

## COUNT III: DISABILITY DISCRIMINATION IN VIOLATION OF THE ADA

64. Hollobaugh restates each and every prior paragraph of this Complaint, as if it were fully restated herein.

65. Hollobaugh is in a protected class for his disabilities (discussed *supra*).

66. Defendant had notice of Hollobaugh's disabilities. Alternatively, Defendant perceived Hollobaugh as disabled.

67. The ADA provides that it is an unlawful discriminatory practice for an employer to discriminate against an employee on the basis of the employee's disability.

68. During his employment with Defendants, Hollobaugh was subjected to threats of dismissal from his superiors based on his and his wife's disabilities.

69. Defendants knew or should have known of the threats against Hollobaugh because the owner, Brian Pohl, was the individual making the threats.

70. Defendant's termination of Hollobaugh's employment was an adverse employment action against him.

71. Defendant's purported reason (or lack thereof) for Hollobaugh's termination was pretextual.

72. The ADA provides that it is an unlawful discriminatory practice for an employer to discriminate against an employee on the basis of the employee's disability.

73. Defendant treated Hollobaugh differently than other similarly situated employees based upon his disability.

74. Defendant violated the ADA by treating Hollobaugh differently from other similarly situated employees outside his protected class.

75. Defendant violated the ADA by applying their employment policies in a disparate manner based on Hollobaugh's disability.

76. Defendant violated the ADA by applying their disciplinary policies in a disparate manner based on Hollobaugh's disability.

77. Defendant violated the ADA by terminating Hollobaugh's employment because of his disability.

78. Hollobaugh incurred emotional distress damages as a result of Defendant's conduct described herein.

79. As a direct and proximate result of Defendant's acts and omissions, Hollobaugh has suffered and will continue to suffer damages.

## COUNT IV: FAILURE TO ACCOMMODATE

80. Hollobaugh restates each and every prior paragraph of this complaint, as if it were fully restated herein.

81. Hollobaugh informed Defendant of his and his wife's disabling condition(s).

82. Hollobaugh requested accommodations from Defendant to assist with his disabilities.

83. Hollobaugh's requested accommodations were reasonable.

84. There was an available accommodation that would have been effective and would have not posed an undue hardship to Defendant.

85. Defendant failed to engage in the interactive process of determining whether Hollobaugh needed an accommodation.

86. Defendant failed to provide an accommodation.

87. Defendant violated R.C. §4112.02 and the ADA by failing to engage Hollobaugh in the interactive process.

88. Defendant violated R.C. §4112.02 and the ADA by failing to provide Hollobaugh a reasonable accommodation.

89. As a direct and proximate result of Defendant's conduct, Hollobaugh suffered and will continue to suffer damages, including economic, emotional distress and physical sickness damages.

## COUNT V: WRONGFUL TERMINATION AGAINST PUBLIC POLICY

90. Hollobaugh restates each and every prior paragraph of this Complaint, as if it were fully restated herein.

91. A clear public policy exists and is manifested in Ohio statutes and/or administrative regulations, or in the common law, against terminating an employee to avoid that employee becoming eligible for FFCRA leave.

92. In *Sutton v. Tomco Machine*, the Ohio Supreme Court noted "we recognize a common-law tort claim for wrongful discharge in violation of public policy when an injured employee suffers retaliatory employment action after an injury but before she or she files, institutes, or pursues a workers' compensation claim." (*Sutton v. Tomco Machine*, 129 Ohio. St. 3d 153, 163 (2011)).

93. This law should be extended to include the recognition of a common-law tort claim for wrongful discharge in violation of public policy when an employee with serious health conditions pursuant to the FFCRA suffers preventative employment action after learning of that employee's serious health conditions but before he becomes eligible for FFCRA.

94. Defendant terminated Hollobaugh's employment.

95. Defendant's purported reason (or lack thereof) for Hollobaugh's termination was pretextual.

96. Defendant actually terminated Hollobaugh's employment to prevent an FFCRA claim.

97. Defendant's termination of Hollobaugh jeopardizes these public policies.

98. Defendant's termination of Hollobaugh was motivated by conduct related to these public policies.

99. Defendant had no overriding business justification for terminating Hollobaugh.

100.   As a direct and proximate result of Defendant's conduct, Hollobaugh has suffered and will continue to suffer damages, including economic, emotional distress and physical sickness damages.

## COUNT VI:  UNLAWFUL INTERFERENCE WITH FFCRA RIGHTS

101.   Hollobaugh restates each and every prior paragraph of this Complaint, as if it were fully restated herein.

102.   Pursuant to the FFCRA, covered employers are required to provide employees job-protected paid leave for qualified medical and family situations related to the COVID-19 pandemic.

103.   Pohl is a covered employer under the FFCRA.

104.   Hollobaugh was an employee eligible for FFCRA due to his and his wife's severe health conditions (described *supra*) and high-risk status related to the pandemic and due to the duration of his employment.

105.   Pohl terminated Hollobaugh's employment the day before the FFCRA went into effect.

106.   Pohl intentionally terminated Hollobaugh's employment before the effective date of the FFCRA in order to interfere with his FFCRA rights.

107.    During his employment with Pohl, Hollobaugh was unable to receive FFCRA benefits for his and his wife's disabilities because of Pohl's interference with his FFCRA rights.

108.    Defendant unlawfully interfered with Hollobaugh's exercise of his rights under the FFCRA in violation the FFCRA.

109.    Defendant's refusal to provide Hollobaugh with information pertaining to FFCRA leave and/or permit Hollobaugh to take FFCRA leave violated and interfered with his FFCRA rights.

110.    As a direct and proximate result of Defendant's conduct, Hollobaugh suffered and will continue to suffer damages.

111.    As a direct and proximate result of Defendant's conduct, Hollobaugh is entitled to all damages provided for in the FFCRA.

## **DEMAND FOR RELIEF**

WHEREFORE, Hollobaugh demands from Defendant the following:

a) Issue a permanent injunction:

    i.    Requiring Defendant to abolish discrimination, harassment, and retaliation;

    ii.   Requiring allocation of significant funding and trained staff to implement all changes within two years;

    iii.  Requiring removal or demotion of all supervisors who have engaged in discrimination, harassment, or retaliation, and failed to meet their legal responsibility to promptly investigate complaints and/or take effective action to stop and deter prohibited personnel practices against employees;

12

     iv.    Creating a process for the prompt investigation of discrimination, harassment, or retaliation complaints; and

     v.    Requiring mandatory and effective training for all employees and supervisors on discrimination, harassment, and retaliation issues, investigations, and appropriate corrective actions;

b) Issue an order requiring Defendant to expunge his personnel file of all negative documentation;

c) An award against Defendant for compensatory and monetary damages to compensate Hollobaugh for physical injury, physical sickness, lost wages, emotional distress, and other consequential damages, in an amount in excess of $25,000 per claim to be proven at trial;

d) An award of punitive damages against Defendant in an amount in excess of $25,000;

e) An award of reasonable attorneys' fees and non-taxable costs for Hollobaugh's claims as allowable under law;

f) An award of the taxable costs of this action; and

g) An award of such other relief as this Court may deem necessary and proper.

Respectfully submitted,

/s/ Matthew G. Bruce_____
Matthew Bruce (0083769)
     Trial Attorney
Evan R. McFarland (0096953)
THE SPITZ LAW FIRM
Spectrum Office Tower
11260 Chester Road, Suite 825
Cincinnati, OH 45246
Phone: (216) 291-0244 x173
Fax:   (216) 291-5744
Email: Matthew.Bruce@SpitzLawFirm.com
Email: Evan.McFarland@SpitzLawFirm.com

*Attorneys for Plaintiff Michael Hollobaugh*

## JURY DEMAND

Plaintiff Michael P. Hollobaugh Sr. demands a trial by jury by the maximum number of jurors permitted.

/s/ Matthew G. Bruce_____
Matthew Bruce (0083769)